NOT FOR PUBLICATION

FILED

DEC 10 2009

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

## UNITED STATES BANKRUPTCY APPELLATE PANEL

### OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br><br>ALICE MICHELLE MERENA,<br><br>               Debtor.<br>_____ | BAP No. MT-08-1342-PaDH<br>BAP No. MT-09-1093-PaDH<br>      (consolidated)<br><br>Bk. No. 08-60066<br><br>Adv. No. 08-00046 |
| KENNETH MERENA; YU ZHAO,<br><br>          Appellants,<br>v.<br><br>ALICE MICHELLE MERENA,<br><br>          Appellee.<br>_____ | M E M O R A N D U M[1] |

Argued and submitted on November 19, 2009
at Pasadena, California

Filed - December 10, 2009

Appeal from the United States Bankruptcy Court
for the District of Montana

Honorable Ralph B. Kirscher, Chief Bankruptcy Judge, Presiding

Before: PAPPAS, DUNN, and HOLLOWELL, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

1

1   Appellants Kenneth Merena ("Kenneth") and Yu Zhao ("Zhao")
2   appeal the bankruptcy court's order denying their motion to
3   bifurcate the trial of their 11 U.S.C. §§ 523(a)[2] and 727(a)
4   claims; its judgment dismissing their § 523(a)(6) claim after
5   they failed to produce any evidence in support of the claim at
6   trial; and its judgment against them after trial dismissing their
7   objection to discharge claim under § 727(a)(4).  We AFFIRM.

8                              **FACTS**

9   Kenneth and Appellee Alice Michele Merena ("Alice") were
10  married in Utah in June 2006.  The marriage was short-lived;
11  Alice filed for a divorce from Kenneth on August 20, 2007.

12  Zhao alleges that after Alice and Kenneth separated, she
13  persuaded him to lend her a small amount of cash for a motel room
14  so Alice could have time alone to consider her predicament (the
15  "Zhao Loan").

16  Alice and Kenneth never reconciled.  Instead, on
17  October 22, 2007, Kenneth sued Alice in Utah state court,
18  alleging that Alice libeled and slandered him by telling his
19  friend, Zhao, as well as others, that Kenneth was unfaithful
20  during their marriage.  Merena v. Merena, Case No. 070915306
21  (3rd Jud. Dist., Salt Lake County, October 22, 2007) ("Utah Libel
22  Action").

23
24
_____
25    [2]  Unless specified otherwise, all references are to the
26  Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules
    of Bankruptcy Procedure, Rules 1001–9037.  The Federal Rules of
27  Civil Procedure are referred to as Civil Rules.

28                              2

On January 30, 2008, Alice filed a chapter 13 bankruptcy
petition in Montana.  In her original schedules, she did not
reference three pending legal actions in which she was involved:
her divorce action, a cohabitant abuse proceeding she had
commenced against Kenneth, and a custody proceeding initiated by
her ex-husband, Ryan Gravely.  She also did not list payments
made by her parents to her divorce attorney, nor the resulting
credit balance in her account at the law firm.  Finally, Alice
did not list several items of personal property in her asset
schedules, namely, a $379.18 Roth IRA, a 19-inch television, a
laptop computer, and an iPod.  She later informed the trustee
about the omitted items and, on December 11, 2008, she amended
her schedules and the Statement of Financial Affairs ("SOFA") to
include the missing information.

Kenneth sought relief from the automatic stay to pursue the
Utah Libel Action by motion filed in the bankruptcy court on
March 22, 2008.  Alice filed no response to the motion, and the
bankruptcy court granted stay relief so that the Utah Libel
Action could proceed to judgment.

On April 11, 2008, Alice converted her bankruptcy case to
chapter 7.  Joseph Womack ("Trustee") was appointed the chapter 7
trustee.

On June 27, 2008, Kenneth and Zhao jointly commenced an
adversary proceeding against Alice.  The complaint included five
separate claims for relief.  In two of those claims, Kenneth and
Zhao alleged that their claims against Alice should be excepted

3

from discharge.   Kenneth asserted his slander/libel claim was
nondischargeable under § 523(a)(6) as a willful and malicious
injury.   Zhao alleged the debt for the Zhao Loan should be
excepted from discharge under § 523(a)(2)(A) because Alice
obtained the loan from him by fraud.   In the other three claims,
Kenneth and Zhao alleged that Alice's discharge should be denied
pursuant to §§ 727(a)(3), (a)(4), and (a)(6)(C).

On July 16, 2008, Alice filed a motion for injunctive relief
in the bankruptcy court seeking to have the Utah Libel Action
stayed pending the outcome of the trial in the adversary
proceeding.   At a hearing on the motion, in an oral decision, the
bankruptcy court announced its intention to deny Alice's motion
and, instead, to stay the adversary proceeding pending the
conclusion of the Utah Libel Action.   In a later written
memorandum of decision entered on August 28, the bankruptcy court
again denied Alice's motion because it found the motion was
essentially an attempt to seek reconsideration of the court's
prior order granting Kenneth's motion to modify the automatic
stay, to which Alice had failed to respond.   However, in an
apparent change of position, the bankruptcy court concluded that
it would not stay the adversary proceeding as previously
announced, and ordered that the trial in the adversary proceeding
proceed as originally scheduled.   In the meantime, in an order
entered on August 20, the bankruptcy court set trial in the
adversary proceeding to commence on December 16, 2008.

4

On October 8, 2008, Kenneth and Zhao filed a motion to bifurcate the trial. Specifically, they sought to bifurcate the trial of the § 727(a) objections to discharge claims from their respective § 523(a) claims, and to continue the December 16 trial on the § 523(a) claims. Kenneth argued that he would be prejudiced if he were forced to try his tort claims in bankruptcy court because, among other things, he would be denied adequate time to do discovery and he was concerned his Utah witnesses would be unwilling to come to Montana to testify. The bankruptcy court entered its decision and order denying the motion to bifurcate on November 19, 2008.

On December 9, 2008, Alice, Kenneth and Zhao approved and submitted a proposed Final Pretrial Order to the bankruptcy court. The order was comprehensive and listed, <u>inter alia</u>, the unresolved issues of fact and law, the contested elements of liability and defenses, and included the parties' witness and exhibit lists. The next day, Kenneth and Zhao filed a motion to supplement their witness list. On December 11, 2008, the bankruptcy court entered its order approving the Final Pretrial Order, making some minor modifications as to the applicable legal standards. The same day, the bankruptcy court denied Kenneth's and Zhao's motion to supplement their witness list.[3]

---

[3] The court entered a detailed, four-page order denying Kenneth and Zhao's request to supplement the witness list. The court observed that the list of thirty-two additional names (there were only five on the original list) included vague identifications such as "Mike (last name unknown)", "Classmates at George May (name unknown)" and "Cousin at Anchorage (name

(continued...)

As scheduled, on December 16, 2008, the trial in the adversary proceeding began.  Kenneth, Zhao, Alice and Trustee appeared and were represented by counsel.  At that time, counsel for Kenneth and Zhao informed the bankruptcy court that because of the procedural developments in this action, they would not offer any proof on Kenneth's § 523(a)(6) claim.  At that point Alice's counsel requested, and bankruptcy court granted, what they referred to as a "directed verdict" dismissing Kenneth's claim.  On December 17, 2008, the bankruptcy court entered an order explaining the reasons for its ruling and a separate judgment against Kenneth and Zhao, and in favor of Alice, dismissing the § 523(a)(6) claim.[4]

The trial on the remaining claims in the complaint proceeded, with Kenneth participating via video conference from

---

[3](...continued)
unknown)".  The court noted that it had entered a written order on August 20, 2008, that the witness and exhibit lists be submitted no later than December 9, 2008.  As indicated above, on December 9, the parties submitted their final PTO with the lists of exhibits and witnesses.  Also on December 9, Kenneth and Zhao submitted a request for a one-day extension to add exhibits, which the court granted.  However, the court ruled that they had not timely requested an extension of the witness list, that their filing of a request for extension of the exhibit list demonstrated their knowledge of the court's scheduling order, and thus they failed to take the "appropriate steps to extend the deadline for identifying witnesses."  The court's order found "no good reason to depart from its longstanding rule that Orders of this Court must be complied with, and complied with in a timely manner."

[4]  Of course, since the § 523(a)(6) was premised solely on Kenneth's tort claims against Alice, it was inappropriate for the bankruptcy court to enter judgment against Zhao in dismissing this claim.  We consider this oversight to be harmless.

1   Utah.   At the end of the day, the proof had not been completed,
2   so the trial was continued to February 10, 2009.

3         On December 24, 2008, Kenneth and Zhao filed their first
4   notice of appeal, targeting the bankruptcy court's entry of
5   judgment against them on the § 523(a)(6) claim.

6         The trial reconvened on February 10, 2009, with all parties
7   appearing.   The presentation of evidence was completed and the
8   bankruptcy court took the issues under advisement.

9         On March 10, 2009, the bankruptcy court issued a lengthy
10  memorandum of decision, in which it made factual findings and
11  concluded that Kenneth and Zhao had failed to satisfy their
12  burdens of proof on the remaining § 523(a) and § 727(a) claims.
13  The same day, a judgment was entered by the bankruptcy court in
14  favor of Alice and against Kenneth and Zhao, dismissing the
15  adversary complaint with prejudice.

16        On March 18, 2009, Kenneth and Zhao filed a second notice of
17  appeal, contending that the bankruptcy court erred in both
18  denying the motion to bifurcate the trial, as well as in its
19  finding that they failed to prove their claims under
20  § 727(a)(4).[5]

21

22
    _____

23        [5]  Kenneth and Zhao listed several additional issues in
    their second appeal, but have briefed none of them.   As a result,
24  any assertions of error by the bankruptcy court concerning those
    issues have been waived.  Alacaraz v. INS, 384 F.3d 1150, 1161
25  (9th Cir. 2004); Int'l Ass'n of Firefighters, Local 1186 v. City
    of Vallejo (In re City of Vallejo), 408 B.R. 280, 291 (9th Cir.
26  BAP 2009).   The Panel therefore considers only those issues
    discussed below.
27

28                                  7

The Panel consolidated the two appeals in an order entered on April 23, 2009.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(1) and (b)(2)(I) and (J).  The Panel has jurisdiction over the appeals pursuant to 28 U.S.C. § 158.[6]

## ISSUES

1.   Whether the bankruptcy court abused its discretion in denying Appellants' motion to bifurcate the trial of the § 523(a) claims from the § 727(a) claims.

2.   Whether the bankruptcy court erred in dismissing Kenneth's § 523(a)(6) exception to discharge claim.

3.   Whether the bankruptcy court erred in finding that Appellants had not satisfied their burden of proof on the § 727(a)(4)(A) claim.

## STANDARDS OF REVIEW

We review a bankruptcy court's decision to deny a motion to bifurcate the trial for abuse of discretion.  M2 Software, Inc. v. Madacy Entm't., 421 F.3d 1073, 1088 (9th Cir. 2005) (citing Danjaq LLC v. Sony Corp., 263 F.3d 942, 961 (9th Cir. 2001)).  A

---

[6]   The order and judgment granting the "directed verdict" against Kenneth on his § 523(a)(6) claim which are the subject of the first appeal in BAP No. MT-08-1342 was obviously not a final order, as it did not resolve all of Kenneth's claims against Alice in the adversary proceeding.  Absent a certification by the bankruptcy court under Civil Rule 54(b), as incorporated by Rule 7054, the bankruptcy court's decision could only be appealed with permission of the Panel.  28 U.S.C. § 158(a)(3).  However, a final judgment has now been entered by the bankruptcy court resolving all claims raised in the adversary proceeding, that judgment has been appealed to the Panel in BAP No. MT-09-1093, and we have consolidated the two appeals.  We therefore have jurisdiction over all the issues raised by Appellants.

two-part test must be applied to determine if an abuse of discretion has occurred: (1) we review _de novo_ whether the bankruptcy court identified the correct legal rule to apply to the relief requested; (2) we review for abuse of discretion whether the trial court's application of the correct legal standard was illogical, implausible or without support in inferences that may be drawn from the facts in the record. United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009).

After Kenneth's counsel announced at trial that no evidence would be offered in support of Kenneth's § 523(a)(6) claim, Alice's counsel moved the bankruptcy court for "a directed verdict." A directed verdict is more properly applicable to actions tried before a jury, not bench trials. As the Panel explained in Kuan v. Lund (In re Lund), 202 B.R. 127 (9th Cir. BAP 1996), under these circumstances, such motions are considered "motions for a judgment based on partial findings, and are governed by [Civil Rule] 52(c) . . . ." made applicable in adversary proceedings by Rule 7052. 202 B.R. at 129 (citations omitted).[7] The trial court's findings of fact under Civil

---

[7] "Judgment on Partial Findings. If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. The court may, however, decline to render any judgment until the close of the evidence. A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a)." Civil Rule 52(c).

1  Rule 52(c) are reviewed for clear error, while its conclusions of

2  law are reviewed de novo.   Id.

3       Finally, the standard of review for a bankruptcy court's

4  decision concerning a § 727(a) objection to discharge is that:

5  "(1) the court's determinations of the historical facts are

6  reviewed for clear error; (2) the selection of the applicable

7  legal rules under § 727 is reviewed de novo; and (3) the

8  application of the facts to those rules is reviewed de novo."

9  Searles v. Riley (In re Searles), 317 B.R. 368, 373 (9th Cir. BAP

10 2004) (citing Beauchamp v. Hoose (In re Beauchamp), 236 B.R. 727,

11 729-30 (9th Cir. BAP 1999)).

12                              DISCUSSION

13                     I.   Motion to Bifurcate.

14       Kenneth and Zhao contend that the bankruptcy court should

15 have ordered that the issues at trial be bifurcated, and that the

16 § 523(a) claims be tried separately from § 727(a) claims.  They

17 argue that to force them to try the libel and slander issues at

18 the December 16, 2008 bankruptcy court trial prejudiced their

19 ability to conduct discovery or present an adequate case, and

20 deprived them of the benefit of the stay relief they had been

21 previously granted by the bankruptcy court.

22       Civil Rule 42(b), incorporated by Rule 7042, "confers broad

23 discretion upon the [bankruptcy] court to bifurcate a trial,

24 thereby deferring costly and possibly unnecessary proceedings[.]"

25 Hangarter v. Provident Life and Acc. Ins. Co., 373 F.3d 998, 1021

26 (9th Cir. 2004) (quoting Zivkovic v. S. Cal. Edison Co., 302 F.3d

27

28                                  10

1  1080, 1088 (9th Cir. 2002)).  Civil Rule 42 allows, but does not

2  require, bifurcation to avoid prejudice to a party or to promote

3  judicial economy.  Houseman v. U.S. Aviation Underwriters,

4  171 F.3d 1117, 1121 (7th Cir. 1999).  Either consideration can

5  justify a trial court's decision to bifurcate a trial.  However,

6  the bankruptcy court here explicitly found that neither condition

7  applied.

8       The bankruptcy court noted that the Utah Libel Action had

9  not been set for trial, and that a trial would therefore not

10  likely occur until some time in the future.  The bankruptcy court

11  stated:

12           Forcing the parties to litigate the § 727
             claim before this Court in December, litigate
13           the Utah claim at an indeterminate date, and
             then return to this Court to litigate the
14           dischargeability of any potential judgment in
             favor of the Plaintiffs in the Utah
15           litigation does nothing but increase
             litigation costs for all parties.

16  Memorandum of Decision (November 19, 2008).  The bankruptcy court

17  could hear and decide Kenneth's slander and libel claims in

18  connection with the § 523(a) exceptions to dischargeability.

19  Sasson v. Sokoloff (In re Sasson), 424 F.3d 864, 869-70 (9th Cir.

20  2005) (citing Cowen v. Kennedy (In re Kennedy), 108 F.3d 1015,

21  1017-18 (9th Cir. 1997)).  And, as the court noted, under

22  § 523(c), the bankruptcy court has exclusive jurisdiction to

23  determine the dischargeability of Kenneth's claim under

24  § 523(a)(6)(C).  Therefore, the bankruptcy court concluded it

25  would be a more efficient use of judicial resources and would

26  promote economy to go forward on all claims in the bankruptcy

27

28                                11

court.  Additionally, in order to afford her a "fresh start," the
bankruptcy court found that continued delays in deciding the
issues raised in the adversary proceeding were potentially
prejudicial to Alice.  Thus, the bankruptcy court found that
neither consideration required by Civil Rule 42(b) justified
bifurcation.

The bankruptcy court correctly identified the applicable
rule of law in deciding Appellants' motion to bifurcate the
trial.  It then properly applied that rule to the facts, and its
conclusion that the trial of the § 523(a) and § 727(a) claims
need not be bifurcated was neither illogical, implausible nor
without support in the inferences that may be drawn from the
facts in the record.  In short, the bankruptcy court did not
abuse its discretion by refusing to bifurcate the trial.

## II.  Dismissal of the § 523(a)(6) claim.

Section 523(a)(6) provides that: "A discharge under section
727 . . . of this title does not discharge an individual debtor
from any debt — . . . (6) for willful and malicious injury by the
debtor to another entity or to the property of another entity."
The aggrieved party must present evidence that the debtor:
(a) willfully injured the creditor or the creditor's property,
i.e., caused a "deliberate or intentional injury, not merely a
deliberate or intentional act that leads to injury."  Kawaauhau
v. Geiger, 523 U.S. 57, 61 (1998); and (b) the injury was
malicious, i.e., a wrongful act, done intentionally, which
necessarily causes injury, and is done without just cause or
excuse.  Carillo v. Su (In re Su), 290 F.3d 1140, 1146-47

(9th Cir. 2002).  These two elements must be proven
independently.  <u>Albarran v. New Form, Inc. (In re Barboza)</u>,
545 F.3d 702, 706 (9th Cir. 2008).  Kenneth offered no proof on
either element.  Rather than prove the required elements for a
prima facie case, at the beginning of the trial on the adversary
proceeding, Kenneth's counsel informed the bankruptcy court that
he would offer no proof in support of his § 523(a)(6) claim.

Kenneth argues that the actions of the bankruptcy court
prevented him from proving his claim.  The crux of that claim was
that the libel and slander allegedly committed by Alice in her
statements to others about Kenneth "willfully, intentionally and
maliciously interfered with Kenneth's existing and/or prospective
economic relations."  Alice's response to Appellants' statements
was to request that the bankruptcy court dismiss the § 523(a)(6)
claim.  The bankruptcy court granted that request and dismissed
the claim.

Kenneth's argument may be fairly summarized as follows:  the
bankruptcy court originally granted him stay relief so that the
Utah Libel Action could be prosecuted and tried in state court.
The bankruptcy court then essentially reversed course when it
later ordered that the § 523(a)(6) claim proceed to trial along
with the Appellants' other claims raised in the adversary
complaint.  When the bankruptcy court denied Kenneth and Zhao's
bifurcation motion, they were forced to "fashion a proposed
witness list on all claims in a very short time period without
the benefit of discovery."  Finally, when the bankruptcy court
did not allow them to supplement their witness list, they were

prevented from calling important witnesses at trial, and elected
not to present any proof on the § 523(a)(6) claim whatsoever.

To address this argument, a review of the facts in
chronological context is useful.

On April 8, 2008, the bankruptcy court modified the stay to
allow the State Court Action to proceed.  On June 27, 2008,
Kenneth and Zhao filed the complaint initiating the adversary
proceeding.  On August 20, 2008, the bankruptcy court entered its
scheduling order in the adversary proceeding, setting a trial
date on December 16, 2008.  The next day, August 21, 2008, in a
hearing, the court indicated that it would hold all adversary
proceedings in abeyance pending outcome of the Utah Libel Action.
However, seven days later, in a written memorandum of decision,
the bankruptcy court reconsidered its oral decision and ordered
that the trial go forward on all claims on December 16.

Thereafter, Kenneth and Zhao, upon discovering that their
discovery efforts "were not going forward as quickly as planned"
moved to bifurcate the § 523(a) and § 727(a) claims on October 8,
2008.  Their motion to bifurcate was denied on November 19, 2008.

In its December 17, 2008 order granting Alice's motion to
dismiss the § 523(a)(6) claim, after carefully reviewing the
Ninth Circuit case law articulating the required elements for an
exception to discharge, the bankruptcy court correctly placed the
burden of proving the existence of those elements on Kenneth as
the creditor.  Albarran v. New Form, Inc. (In re Barboza),
347 B.R. 369, 379 (9th Cir. BAP 2007) ("[T]here is a presumption
that all debts are dischargeable unless a party who contends

14

otherwise proves, with competent evidence, an exception to discharge."), rev'd on other grounds, 545 F.3d 702 (9th Cir. 2008); see also Brown v. Felsen, 442 U.S. 127, 128, 99 S. Ct. 2205, 60 L.Ed.2d 767 (1979).  The bankruptcy court found that Kenneth had "every opportunity to litigate [the § 523(a)(6)] claim, and elect[ed] not to offer any exhibits on said claim or call any witnesses with respect to said claim[.]"  Order at 1-2 (December 17, 2008). The court found that Kenneth had "wholly failed to prove [his] claim under 11 U.S.C. § 523(a)(6)." Id. at 4.  As a result, the bankruptcy court concluded judgment should be entered in favor of Alice regarding that claim.

Kenneth's argument that he did not have a fair opportunity to prove his claim lacks merit.  Kenneth was granted relief from the stay to commence (or resume) discovery in the Utah Libel Action, on April 8, 2008.  In June, Kenneth commenced the adversary proceeding, thereby creating an additional opportunity to pursue discovery.  There is no indication in the record that Kenneth sought to compel discovery in the adversary proceeding, nor that he requested a continuance or delay of the trial to prepare for trial until after he lost the bifurcation motion.  He was aware from and after entry of the scheduling order on August 20, 2008, and the bankruptcy court's decision denying Appellants' motion for injunctive relief on August 28, that the trial was to commence on December 16 on all counts.  In short, Kenneth had an ample opportunity to conduct discovery and prepare his case for trial.

1   Under these facts, we find no clear error in the bankruptcy
2   court's findings and conclusions that Kenneth failed to prove his
3   claim, and in its decision to dismiss the § 523(a)(6) claim, when
4   Kenneth announced at the beginning of the trial, without advance
5   warning to the bankruptcy court, that he would not offer any
6   proof on this claim.

### III.   The § 727(a)(4) Claim.

8       Kenneth and Zhoa contend that the bankruptcy court erred in
9   dismissing their claim against Alice to deny her a discharge
10  under § 727(a)(4)(A).[8]   We conclude no error was committed.

11      "A claim for denial of discharge is construed liberally and
12  in favor of the discharge and strictly against a person objecting
13  to the discharge."  Roberts v. Erhard (In re Roberts), 331 B.R.
14  876, 882 (9th Cir. BAP 2005) (citing First Beverly Bank v. Adeeb
15  (In re Adeeb), 787 F.2d 1339, 1342 (9th Cir. 1986).  After taking
16  into consideration this public policy, a discharge may be denied
17  under § 727(a)(4)(A) if the debtor knowingly and fraudulently
18  makes a false oath or account in the course of the bankruptcy
19  case.[9]  A false statement or an omission in the debtor's
20  bankruptcy schedules or statement of financial affairs can
21  constitute a false oath.  Kahlil v. Developers Sur.& Indem. Co.
22  (In re Khalil), 379 B.R. 163, 172 (9th Cir. BAP 2007), aff'd

---

23

24      [8]   Kenneth and Zhoa did not appeal the decision of the
    bankruptcy court dismissing their remaining § 727(a) claims.

25

26      [9]  "The court shall grant the debtor a discharge, unless —
    . . . (4) the debtor knowingly and fraudulently, in or in
    connection with the case — (A) made a false oath or account[.]"
27  § 727(a)(4)(A).

28                      16

578 F.3d 1167 (9th Cir. 2009); Roberts v. Erhard (In re Roberts), 331 B.R. 876, 882 (9th Cir. BAP 2005), aff'd, 241 Fed. Appx. 420 (9th Cir. 2006).  To succeed on a claim for denial of discharge under § 727(a)(4)(A), the proponent must show by a preponderance of the evidence that: (1) Debtor made such a false statement or omission, (2) regarding a material fact, and (3) did so knowingly and fraudulently. In re Roberts, 331 B.R. at 882.

"The fundamental purpose of § 727(a)(4)(A) is to insure that the trustee and creditors have accurate information without having to conduct costly investigations." Fogal Legware of Switz., Inc. v. Wills (In re Wills), 243 B.R. 58, 63 (9th Cir. BAP 1999) (citing Aubrey v. Thomas (In re Aubrey), 111 B.R. 268, 274 (9th Cir. BAP 1990)).  But a false statement or omission that has no impact on a bankruptcy case is not material and does not provide grounds for denial of a discharge under § 727(a)(4)(A). In re Khalil, 379 B.R. at 172.

Several pages of the bankruptcy court's extensive memorandum of decision were devoted to its findings, conclusions, and reasons supporting its decision to deny Appellants' objection to discharge.  The bankruptcy court found the following facts relevant to its decision to dismiss Appellants' § 727(a)(4)(A) claim.

In her original schedules, Alice failed to list three pending legal actions:  her divorce action, a cohabitant abuse proceeding against Kenneth, and a custody proceeding initiated by her ex-husband, Ryan Gravely.  She also failed to list two payments to her divorce attorney:  a $1,500 payment on

August 20, 2007 and a $5,000 payment on November 8, 2007.  Both payments were made by her parents, and resulted in a $4,454.93 credit balance in her account at the law firm.

Alice further did not list certain items of personal property, namely, a Roth IRA worth $379.18, a 19-inch television, a laptop computer, and an iPod.  She later informed the trustee about the omitted items, and on December 11, 2008, she amended her schedules and the SOFA to include the items.

Alice testified that she did not list the pending lawsuits on the SOFA because she misunderstood the requirements of that form, and thought she need only list actions with a financial impact on her finances or the bankruptcy case.  Trustee testified at trial that while the lawsuits should have been listed, they were not particularly important in Alice's case because they did not involve claims that belonged to the bankruptcy estate which could generate any recovery for the creditors.

With regard to the items of personal property omitted from her schedules, Alice testified that the television was a postpetition gift from her mother to Alice's children, and that the laptop did not work.  She testified that she simply overlooked listing the Roth IRA and the iPod in her schedules.

In addition, Alice amended her schedules to include one omitted obligation for $1,500 to Oculoplastic Surgery.

Kenneth and Zhao contend that Alice undervalued her 2003 Honda Civic in her schedules, but Trustee found her valuation to be reasonable after inspecting the vehicle and consulting the NADA and Kelly Blue Book values.

1    Kenneth and Zhao also argue that Alice failed to disclose
2   the sale of her condominium in her SOFA, and that she failed to
3   account for $23,723.03 in proceeds from that sale.  The
4   bankruptcy court found that Alice spent approximately half of the
5   sale proceeds on living expenses, and used the balance to repay a
6   loan to her parents for money they provided as a down payment on
7   the condo.  The court found that Alice failed to list the condo
8   sale "out of ignorance of the Bankruptcy Code."  Memorandum of
9   Decision at 38 (March 10, 2009).  It noted that Trustee was aware
10  of the sale of the condo and that the court "deem[ed] it
11  significant that [Trustee] appeared and testified that he saw
12  nothing out-of-the-ordinary in this case that would warrant a
13  proceeding to deny Alice's discharge."  Id. at 19, 31.
14       The only omission from the schedules and SOFA of concern to
15  Trustee related to the payments made to Alice's divorce attorney,
16  which he indicated he would investigate more thoroughly.  He
17  testified that debtors in bankruptcy frequently forget to
18  schedule all their assets as well as all of their debts.  He
19  noted that Alice was forthcoming about the omitted assets at the
20  § 341(a) creditors meeting, and that she ultimately amended her
21  schedules to correct those omissions.
22       Kenneth and Zhao also argued that Alice's average monthly
23  income on her Statement of Monthly Net Income did not match her
24  gross income on schedule I, or her monthly income shown on Form
25  22C. However, not only did Alice explain the discrepancy, but the
26  bankruptcy court noted that despite the inaccuracy, Alice's
27  annualized current monthly income was below Montana's applicable
28                                  19

median income, and thus of no material impact in the bankruptcy case.

Kenneth and Zhao listed a host of other alleged inaccuracies in Alice's schedules, including her valuation of a pair of skis, Alice's obligation on a promissory note for $10,400, the failure to produce requested documents, and her taking of certain items from the marital home when she moved out.  The bankruptcy court determined that Kenneth and Zhao had not proven that any of these alleged inaccuracies and omissions were material.

Finally, Kenneth and Zhao alleged Alice had omitted mention of a leather jacket, her former husband's pension fund, the sale of a condominium, and domestic violence charges against Alice which were later dismissed, as a basis for denial of discharge under § 727(a)(4)(A).  The bankruptcy court noted that Trustee "saw nothing of concern in Alice's schedules and [Trustee] stated that he had no reason to bring a motion to dismiss for abuse and no reasons existed in [Trustee's] opinion for [Trustee] to seek denial of Alice's discharge."  Memorandum of Decision at 17.

The bankruptcy court fully addressed each of the major inaccuracies cited by Appellants, analyzing them under the Roberts test.  After doing so, the bankruptcy court found that

> . . . Plaintiffs failed their burden of proof by a preponderance of the evidence by failing to show knowing and fraudulent false oaths and omissions i[n] Alice's Schedules and SOFA. . . .  In particular, the Plaintiffs have not shown fraudulent intent through a pattern of falsity, reckless indifference to and disregard of the truth, and demonstrated course of conduct.
> Moreover, in addition to failing to prove that Alice's omissions and errors on her Schedules and SOFA were done knowingly and with fraudulent intent, the

Plaintiffs failed to show that such omissions were material. The Trustee testified that the omitted assets had little value and had no impact on the bankruptcy case. Similarly, the omitted lawsuits bear no relationship to Alice's bankruptcy estate and do not concern business dealings or the existence and disposition of Alice's property.

Memorandum of Decision at 39 (March 10, 2009).

In sum, the bankruptcy court found and concluded that Alice's omissions from her bankruptcy schedules and SOFA were not motivated by any intent to hide assets or defraud her creditors, and that the information omitted was not "material" for purposes of § 727(a)(4)(A).  In re Roberts, 331 B.R. at 882.  The bankruptcy court's findings of fact were supported by the evidence and testimony, and were not clearly erroneous.  The court applied the correct rule of law to those facts, and it did not err in the conclusions it reached.  We therefore conclude that the bankruptcy court did not err in rejecting Appellants' objection to discharge under § 727(a)(4)(A).

## CONCLUSION

We AFFIRM the bankruptcy court's decisions in all respects.

# U.S. Bankruptcy Appellate Panel
# of the Ninth Circuit

125 South Grand Avenue, Pasadena, California 91105
Appeals from Central California (626) 229-7220
Appeals from all other Districts (626) 229-7225

## NOTICE OF ENTRY OF JUDGMENT

**BAP No.:**   **MT-08-1342-PaDH & MT-09-1093-PaDH**   (*Consolidated Appeals*)

**RE:**   **ALICE MIKCHELLE MERENA**

A separate Judgment was entered in this case on *12/10/2009.*

## BILL OF COSTS:

Bankruptcy Rule 8014 provides that costs on appeal shall be taxed by the Clerk of the
Bankruptcy Court. Cost bills should be filed with the Clerk of the Bankruptcy Court
from which the appeal was taken. 9th Cir. BAP Rule 8014-1

## ISSUANCE OF THE MANDATE:

The mandate, a certified copy of the judgment sent to the Clerk of the Bankruptcy
Court from which the appeal was taken, will be issued 7 days after the expiration of the
time for filing a petition for rehearing unless such a petition is filed or the time is
shortened or enlarged by order. See Federal Rule of Appellate Procedure 41.

## APPEAL TO COURT OF APPEALS:

An appeal to the Ninth Circuit Court of Appeals is initiated by filing a notice of appeal
with the Clerk of this Panel. The Notice of Appeal should be accompanied by payment
of the $455 filing fee and a copy of the order or decision on appeal. Checks may be
made payable to the U.S. Court of Appeals for the Ninth Circuit. See Federal Rules of
Appellate Procedure 6 and the corresponding Rules of the United States Court of
Appeals for the Ninth Circuit for specific time requirements.

CERTIFICATE OF MAILING

The undersigned, deputy clerk of the U.S. Bankruptcy Appellate Panel of the Ninth Circuit, hereby certifies that a copy of the document on which this certificate appears was transmitted this date to all parties of record to this appeal.

**By:** Vincent Barbato, Deputy Clerk

**Date:** December 10, 2009